Hear ye, hear ye, this Honorable Appellate Court for the Second District is now open. The Honorable Justice Robert D. McLaren presiding, along with Justice Anne B. Jorgensen and Justice Liam C. Brennan. The case is number 219-1019, Ronald Adler, et al., Plaintiff's Appellants v. Bayview Loan Servicing, LLC, et al., Defendant's Appellees. Arguing for the Appellants, Daniel Brown. Arguing for the Appellees, Robert E. Haney. Thank you. Mr. Brown, you may proceed. Thank you, Your Honor. Good morning, and may it please the Court. Mr. Kaplan has explained to me that even though I have 10 minutes of uninterrupted time, that the panel is well familiar with the facts and legal issues of the case and is ready to jump into questioning. I will take a few minutes to highlight a couple of issues rather quickly so we can jump into the matters that the Court is concerned about. First, I want to talk about Section 15-1509C and, in particular, the context in which that subsection is situated. It's situated within Section 15-1509, which is entitled, quote, Transfer of Title and Title Acquired, end quote. The entirety of this section provides the mechanisms for the transfer of title to the foreclosure purchaser after a successful foreclosure sale. In this context, the bar of all claims relates to claims that impact the transfer or acquisition of title to a foreclosed property. The bar essentially acts as a protection for a bona fide purchaser. It provides foreclosure purchasers with finality. They can rest assured that once title has vested, there will not be endless relitigation by aggrieved mortgagers that threatens their rights to the property that they just purchased. A lack of finality would have a chilling effect on foreclosure sales. Foreclosure purchasers would not know whether they can keep the property that they've acquired or whether they have to fight to keep their status as owners of the property with ongoing litigation. The Brewer case cited in the briefing makes this much clearer. The claims bar prohibits an aggrieved mortgager from challenging the judgment and sale after title is vested in the purchaser, and nothing more than that. It is not, as athletes argue, a blanket release. Indeed, if you separate the bar of all claims from its context, a blanket release is precisely what it becomes. As I stated in the briefing, it would bar things completely unrelated to foreclosure, like personal injury claims or claims among the parties to the foreclosure of a case that are perhaps coming from separate contracts that are not at issue in the foreclosure. That is not what the legislature intended, and indeed, a ruling supporting that notion would lead to absurd results. To avoid these absurd results, appellees in the trial court have invented their own limitations. The appellee's limitation is on claims related to the foreclosure. The trial court's limitation is for claims for alleged lender misconduct. These limitations were invented from whole cloth. The statute did not contain any such limitation. The trial court and appellees simply made them up to try to cover the obviously far-reaching and absurd consequences of their respective positions. But the context of the statute and the interpreting case law provide the appropriate limitations. The claims bar prohibits only claims claiming an interest in the foreclosed property or trying to overturn the foreclosure judgment or sale. In essence, claims that would endanger the foreclosure person's rights to the property that they just purchased. The Adler's claims in this case do neither. They seek only money judgment for damages arising from post-foreclosure judgment misconduct. They're not claiming an interest in the foreclosed property, and they're not seeking to overturn the foreclosure judgment or sale. Moving on to res judicata, res judicata does not apply to this case because the identity of causes of action is not present here. The claims in this case arose years after the foreclosure judgment was entered, two years or more. The foreclosure judgment was entered around February of 2012, and the alleged misconduct began toward the end of 2014. The foreclosure judgment adjudicated the merits of those foreclosure claims, the existence of the mortgage, the alleged defaults, and Boney's rights to foreclose. Those are the core matters at issue in the entirety of the foreclosure case. Conduct that occurs after the foreclosure judgment cannot possibly be the same transaction as the matters that were already adjudicated in the foreclosure judgment. And further, equitable considerations prohibit the application of res judicata to this case. Setting aside a number of the others raised in the briefing, the one that I want to focus on is that the Supreme Court prohibits the application of res judicata when it would be fundamentally unfair to do so. And here it would be fundamentally unfair because Boney pulled a bait and switch. In the foreclosure case, they argued that it was apples and oranges, the Adler's claims, compared to the claims at issue in the foreclosure case. They said they were entirely separate and not related whatsoever. That's what they argued in the foreclosure case. But now that the Adlers have brought their claims in a separate lawsuit, as both the court and Boney contemplated during the foreclosure case, now they're saying that they're too inextricably intertwined and related and that res judicata applies. But the equities do not allow Boney to pull that type of bait and switch. And for those reasons, res judicata and Section 1609C do not operate to bar the Adler's claims. I'll leave it at that if the court has any questions. Thank you. Justice Jorgenson, do you have any questions? Yes, my question is, you know, and I appreciate your argument. But how do we get around the pretty clear language in 1509C that says, unless otherwise specified in the judgment of foreclosure shall be an entire bar of all claims to the parties of the foreclosure? I mean, how do we write into those that phrase words that are simply not there? Well, the text has to be interpreted in its context and all claims have to relate to the transfer of title to the foreclosure purchaser. And so all claims relates to all claims that threaten that transfer of title. But if the court takes all claims and deprives it of its context. And as I said before, let's say, for example, that there was another mortgage on a separate property that was not an issue in that foreclosure case. But that's my point. Sort of the examples that you raise would be claims that would not have been part of the original foreclosure claim. So when you say all claims of the parties to the foreclosure, not to any foreclosure, I mean, isn't that pretty tight? Well, no, I think that you're sort of missing a distinction here. All claims to the parties to the foreclosure. If you interpreted it again, devoid of its context, it would operate to bar claims unrelated to the foreclosure, but among the parties to the foreclosure. And if you strip that sentence of its context, you end up with a blanket global release among all of the parties to the foreclosure, regardless of the subject matter of the claim. OK. All right. I appreciate your position. Thank you, Justice McClaren. That was really my question. OK, thank you. Justice Brennan, do you have any questions? You're muted, Justice Brennan. Thank you. I do have a question. You talk about the equities of not allowing this suit to go forward in a couple of different contexts, but looking at 1509C specifically and the Mortgage Foreclosure Act generally, these claims, they would have, first of all, they would have been allowed by the trial court, at least as it relates to the breach of contract action. Had they been filed in a timely manner. And I'm thinking about that in the context of 1508, which allows for a variety of claims prior to confirmation, such as the ones raised. The time to have raised these issues was prior to confirmation. And isn't that the bar that 1509C is concerned with? No, Your Honor, I disagree. First of all, with respect to the trial court's ruling, the Adler's did bring their claims in a timely manner. They didn't know that they had these claims because they still thought that they were going to get a loan modification until after Boney moved to affirm the sale. It was only when Boney made the move to affirm the sale that the Adler's realized that their attempts to modify the loan had been completely departed. Well, when did they move to confirm the sale in relation to the filing of the counterclaim? It was within a few weeks. Let me go to the equities as it relates to raised judicata for a moment. I mean, how many bites at the apple do parties related to the same claims actually get? They were denied the right to file the counterclaim in the trial court. Then they go to federal court. Then they come back down and file a separate action here. I mean, at what point do we say from a raised judicata standpoint, enough is enough? Raised judicata only applies when there's a final adjudication on the merits. They've had zero bites at the apple, Your Honor. Let me ask you this question. Do you have a single case that stands for the proposition that a trial court's denial of leave to file a counterclaim on timeliness grounds is not a decision on the merits? Well, I mean, there's the comment from the trial court itself, Your Honor, where part of the basis of his decision to deny leave was the notion that they had another avenue by which to pursue those claims. That was also the argument advanced by Boney. Wouldn't you agree that that was kind of a secondary observation by the trial court that the primary thrust of the trial court's reasoning was this is on timeliness? I would not agree, Your Honor, no. I would say that the existence of another avenue to pursue those claims was essential to the court's rule. Again, it's an exercise of discretion. I also think, once again, the court was mistaken with respect to the timeliness because by the time the claims existed, meaning by the time that the Adlers knew that their loan modification effort had been discarded by Boney and Bayview, they filed almost immediately thereafter. They got notice of that by the motion to affirm the sale. But as far as the case goes, I mean, I don't have a citation handy, Your Honor, but I think it's fairly obvious that a ruling to deny leave to file counterclaims is not an adjudication of the merits of those counterclaims. It would be impossible for that to be the case. The merits were never considered. Well, didn't Bayview say that they would not agree to the no liability language in March and that the PMI applied in April some five months before the counterclaims filed? Yes, and the Adlers counsel responded by letter saying, you know, you're mistaken here. You need to make these changes and we need some more information. And the other side, they just didn't respond timely or adequately. And so Adler's counsel was trying to fix it and get it done and get the loan modified rather than just jumping into unnecessary litigation that would benefit his client. And just to be clear, the Adlers did not appeal the denial of the leave to file the counterclaim. No, they didn't. And why would they, Your Honor? The court just said, bring this in another avenue that mitigates my decision here. And also, I think the court understands it's an abuse of discretion standard. To appeal that would be largely a waste of time. Thank you so much. I have no additional questions. Thank you. Mr. Brown, I believe your clients filed for federal bankruptcy relief. Is that correct? Yes, Your Honor. And because of it, the sale was somewhat delayed. Is that correct? That's correct, Your Honor. And was it delayed because there was a stay, or was it delayed because there was a stay and a discharge of this debt by the bankruptcy court? It was delayed initially because there was a stay, and then it was further delayed because they started seeking a loan modification. So they never sought discharge in bankruptcy for the mortgage? No, they did. And their personal obligation on the mortgage was discharge, but that discharge would not operate to halt the foreclosure case in any way. It just means that they cannot be held personally liable for any deficiency. Yes, and so the loan modification that you were referring to provided that they would remain not personally liable, whereas in the first mortgage contract they were personally liable. Is that not correct? That was actually one of the problems with the loan modification agreement, is it did not contain language acknowledging the existence of the discharge, and therefore by implication could arguably have been sought to reestablish personal liability. Others counsel found that unacceptable, and in practice, Your Honor, when there is a post-discharge modification, universally there is language in the modification agreement that says that the modification does not seek to reestablish personal liability, because otherwise it would violate the bankruptcy discharge. You talk about something that's fundamentally unfair, and I'm having a problem wrapping my head around the idea that your clients were discharged in bankruptcy, and therefore the only item that the mortgagee could go after was the property, because even if there was a deficiency judgment, it was abrogated by the discharge in bankruptcy, and now you want to have a modification of a loan agreement that supposedly would put your clients in the position where if they, quote unquote, paid for one or no months after the modification was agreed to, that the bank would have to foreclose again, and this time as it happened, actually it didn't happen, but it happened in the sense that there was a chain of events. Your clients would be scot-free and would basically be entitled to possession of the property while it took a year or two to foreclose on the mortgage, because according to your demand or request, the modification agreement would see to it that your clients wouldn't end up again having a personal deficiency judgment against them. Well, your Honor, just to be clear, I think your Honor has slightly misconstrued how that operates. The discharge injunction is an absolute prohibition on Bayview or Boney trying to reestablish personal liability in the context of a loan modification or otherwise. It's simply not allowed, and it's fairly routine for mortgagors to file bankruptcy in the pendency of a foreclosure case, discharge their personal obligation on the loan, but nevertheless modify the loan so that they can continue to occupy the property, and it's ordinary course for servicers like Bayview and Boney to grant those modifications because they're not dependent on the personal obligation, but rather the ability to pay on the modified mortgage, which the Adler's had demonstrated. So there's nothing fundamentally unfair of the Adler's continuing to bargain for a loan modification post-discharge. You didn't say it was unfair to bargain. What I'm suggesting to you is you're claiming it's unfair to deny the bargain or not to enter into it because, quote unquote, since you have the ability to fairly argue that you should remain debt-free, that supposedly they have to enter into an agreement where they are now going to look only after the property, which they've already got a sale for. Well, Your Honor, what's fundamentally unfair was not, I mean, we're sort of getting into the merits of the claims, and what I'm saying was fundamentally unfair was the bait and switch that occurred at the final hearing. And then what was fundamentally unfair was for Boney to say, this case, their claims have nothing to do with the foreclosure claims. They can bring these in a separate action. And so you should deny leave to file counterclaims because they can do this elsewhere. And it's fundamentally unfair for them to be denied leave to pursue claims based on that notion. And then for Boney to take the exact opposite position when the Adler's do precisely what Boney contemplated they would. Well, so and that relates to both arguments or just the argument rate race judicata? It just relates to race judicata. I don't think that it speaks to the question of the scope of Section 1509C. OK. Are there any other questions based upon any other questions that were raised previously? No, I have no additional questions. Thank you. OK. Justice Brennan. Just one. Isn't the language you were seeking from Bayview in the loan modification regarding personal liability, isn't that language redundant based upon your interpretation of the law based on the bankruptcy discharge? It's not redundant to have Boney recognize that it's going to respect the existence of the discharge. If it's not there and then Boney were to seek personal liability based on the modification agreement, it would put the Adler's in a terrible position where they would have to defend the sanctity of the discharge. And again, it is standard operating procedure for a modification agreement entered into with mortgagors that have received a discharge of their personal obligation to have language in there that recognizes it. I've probably done about 50 different loan modifications, largely in the pro bono context. And whenever there is a bankruptcy discharge, that language is always there. You usually don't even have to ask for it because the banks and the mortgage services are trying to protect themselves from potential discharge violations by ensuring that it's in there. But that language is a prophylactic, so to speak. I mean, even without it, ultimately, the Adler's would prevail on that issue. They would likely prevail. Yes, Your Honor. But they shouldn't have to have a fight. The loan servicer and the mortgage holder should agree that the discharge will be respected in the contract rather than the Adler's having to have to fight to respect the discharge and subsequent litigation. All right. I have no additional questions. Thank you. Thank you. Anne, do you have any other questions? No. Thank you. Thank you. Mr. Brown, you'll have an opportunity to make rebuttal. Mr. Haney, you may proceed. All right. Thank you. Good morning, Justices McLaren, Jorgensen, and Brennan. I'm Robert Haney, representing the athletes, Bayview, the servicer, and Bank of New York, who was the lender. And I want to talk about Section 1509 of INFL, which I believe is a complete bar to the plaintiff's claims. But first, a little bit of background. Five years ago, the plaintiffs, Mr. and Mrs. Adler, were defendants in Kendall County State Court in that foreclosure lawsuit, 10-CH-1319. And on September 15th of 2015, about five years ago, the Adlers presented a motion for leave to file the counterclaim. This proposed counterclaim sought damages in connection with a failed loan modification agreement under HAMP and alleged that the servicer's conduct was unfair. The trial court judge, Judge McAdams, denied the plaintiff's motion because the counterclaim was brought too late, nine months after the plaintiffs were aware of their cause of action and after the judgment had already been entered. The sale of this property was confirmed on November 2nd, 2015, and the deed was issued to the Bank of New York, who was a successful bidder, four days later on November 6th of 2015. So ended the first lawsuit, and as your honors have noted, no appeal was filed. The second lawsuit concerns the plaintiffs having filed in the United States District Court for the Northern District about two years later, 17-C-6735, and that second lawsuit was substantially similar to the belated counterclaim that the plaintiffs had sought to file in the Kendall County State Courthouse. The federal judge, Charles Kokoris, dismissed the second lawsuit per Rooker-Feldman, and that doctrine precludes a lower federal court from exercising jurisdiction over claims, seeking review of state court judgments, and his analysis is in the record at C-157. In his opinion, Judge Kokoris stated that the lawsuit, that is the federal court lawsuit, was a collateral attack on the Kendall County foreclosure judgment, and that's found at C-159. In particular, the plaintiffs alleged in their federal complaint that, as a direct and proximate result of the foreclosure, the plaintiffs lost their family home. That second lawsuit, as I say, was dismissed for lack of jurisdiction in the federal court. The third lawsuit is the instant case that we're here to talk about this morning, and the instant lawsuit was filed on March 18th of 2019. That's 2019-L-31. This third lawsuit, which was dismissed by Judge Krentz, sought damages in connection, again, with a failed loan modification, and, again, alleged that the servicer's conduct was unfair. The claims were asserted under the RESPA statute and under ICFA, Illinois Consumer Fraud. As your honors know, moved to dismiss this lawsuit because the plaintiff's claims were barred by res judicata and under 1509 of IMFL. Under 1509, because the vesting of title following the foreclosure sale is a complete bar to all claims. As noted, this language is as noted by Justice Jorgensen. So I have four points I want to make before I yield myself to questions. First of all, the plaintiff's remedy in this case was to appeal the final judgment that was entered in the Kendall County State Courthouse, that foreclosure lawsuit, 10-CH-1319. I think I'm stating the obvious when I say that September 15th of 2015 was not a good day for the Adlers. And I say that because I think we can all, as lawyers, put ourselves in the position of the two lawyers and the judge who participated in that hearing. On the one hand, we have the attorney for the Adlers saying, I have a counterclaim, I want to file my counterclaim, and I must file my counterclaim in this foreclosure lawsuit. On the other hand, you have the attorney for the lender saying, you don't have a counterclaim, and if you do have one, go ahead and file it in the federal courthouse. And then you have the judge who's trying to manage his docket and his caseload who has to decide whether to exercise discretion and allow the counterclaim. As you know, he did not allow the counterclaim because he found that it had been filed too late in the process. The two takeaways from this hearing, and we have the entire transcript of that hearing attached to the plaintiff's complaint. The two takeaways are, first of all, there's absolutely no agreement here between the lender's attorney and the Adler's attorney about filing a subsequent lawsuit. In order to have an agreement, you have to have two parties. And you have one attorney saying, I'm insisting that I file the counterclaim in the foreclosure, and the other attorney insisting that he shouldn't be permitted to do it. There is no agreement entered into, and there's no discussion about how these two parties could avoid the application of 1509, which would be a bar unless these claims were specifically set out in the judgment order. The second takeaway is that the trial court judge absolutely did not order or authorize any new lawsuit. Per Illinois law, any such reservation must be clearly expressed and in writing. There's no such order. There's no such ruling. Right. The second point I want to make concerns 1509C, which I think is the most important part of this appeal. 1509C of IMPFEL bars all claims once titled S by D. The plain language of 1509C states that it applies to all claims of parties to the foreclosure. Several cases were cited in Appley's brief. The Hoppegan, I'm not sure if I'm saying that right, Rob Hockeron case, found that language to be clear and unambiguous. The Taylor case, in which my law firm represented the lender, found that 1509C bars all claims. And the Cortez case, which is the most recent case involving 1509C, also reaffirmed that 1509 bars all claims. And the Cortez case actually concerned the claim that a loan modification had been entered into, which is somewhat similar to the claims being raised in this plaintiff's lawsuit. I don't envy Mr. Brown's position in this case, since he has to argue that 1509C, although it says all claims, it doesn't mean all claims. And Mr. Brown scrambles to try and find some reason why the claims that he raises in his complaint are excluded from 1509C. But the problem, and he has two problems. The first is that 1509C does not say all claims attacking the foreclosure. It says all claims. So in order to prevail, this court would have to change what the legislature said and what the Illinois legislature intended when they enacted 1509. The second problem is that paragraph 95 of his complaint clearly states, as a direct and proximate result of the foreclosure, the plaintiffs lost their family home. So the claims or the argument that the instant complaint is not an attack on the foreclosure judgment, I think, is incorrect. And certainly, Judge Koukouros agreed with that, and so did Judge Prentz when he dismissed the plaintiff's complaint. The third point I want to make before questions concerns res judicata. I don't have a lot to say about this. I think it's from the analysis from Judge Prentz that C190, all the elements of res judicata are met with final judgment on the merits. The same operative facts as in the proposed initial counterclaim, which is the servicer's alleged unfair conduct. And pursuant to River Park and the Lowenthal cases, I think it's clear that res judicata does apply in this case. I noticed Judge Brennan and Judge McLaren both addressed the equity question. I don't see there's anything unequitable about having entered summary judgment, especially in a situation where the plaintiffs had every opportunity to raise their claims in the initial foreclosure lawsuit. And then the final point to make concerns a judicial estoppel. I know that Appellant's counsel keeps talking about a bait and switch. I think that's a mischaracterization. We can all read the transcript and know what these attorneys and what the judge had in mind at the time of that hearing. The other point to make is that any argument of judicial estoppel I think is conceded by Appellant as having been waived since it wasn't raised at the trial court. And it doesn't help in any event because if judicial estoppel really applied, then the plaintiffs would be barred from bringing the claims and making the arguments that are being made at this time because they're completely different from what was argued at the time of the hearing in the foreclosure case, when they argued that the counterclaim had to be brought in the initial foreclosure lawsuit. So I mean, those are the important points I think from Appellee's point of view and be happy to answer questions if I can. Justice Jorgensen, do you have any questions? My really my one question is I keep going back to the statute. And when I asked your opposing counsel, he about the language and the phrase of a bar to all claims for all parties to the or any party to the foreclosure. And he raised some interesting points. I am curious as to your response to that. An over broad bar. I'm sorry. No, I think that I think that the argument made by Mr. Brown and I credit him with being creative. I think he's attempting to to put language into the statute that doesn't exist and it was not not intended by the legislature. I don't know that it's the purpose of appellate review to do that at this stage. I think maybe there could be some clever arguments be made about about particular types of claims that that might be problematic for the application of 1509. But I certainly don't think that the claims that are being raised in this case are rooted in any way from the application of that statute. All right. So your position is it says what it says and we should not attempt to write anything else into it. Yeah. And that's a pretty I guess that's a pretty easy position to take. But I guess that's where I am. Fair enough. Would you also agree we can affirm the trial court here on any of these bases. We don't don't have to conclude that the court was right on both issues. I think that's the law. And I think as I said previously I think on the basis of 1509 alone that the the appeal ought to be denied. All right. I have no other questions. Justice McLaren. Thank you. Thank you. Justice Brennan do you have any questions. I do briefly setting 1509 C aside for a moment and just focusing on res judicata. I agree with. I agree with you that judicial assault estoppel strictly speaking looking at the case law would not apply. I don't think that the I don't think that there was a contrary position argued. Nor do I think strictly speaking did the trial court reserve the issue as it relates to res judicata and intend to allow a future lawsuit. But looking at res judicata by itself. Obviously, there's a failsafe provision, if you will, in terms of how we interpret res judicata and we can always decline to apply it. When we look at the equities of a situation. And I'm just looking at the transcript that you referred us to the in the transcript. You know, the defense attorney says apples and oranges. If he wants to file a ham suit. He can do that in federal court and the trial judge, though I think it's The primary reason for disallowing the counter claim was timeliness. He did also say I'm paraphrasing, but it comforts me that at least the defense or sorry the that the plaintiffs have or counter plaintiffs have some Place where they can address this later. So I bring those two things up because I don't think it's judicial estoppel. I don't think it was reserved, but Isn't it inequitable as to this failsafe idea and res judicata to potentially not apply res judicata in this context. All right. Well, there's a lot to unpack there. Sorry. No, that's okay. I mean, you know what I think. Honestly, if we look at this and we look at the transcript. I think as lawyers, we know what's going on here. We've got two attorneys that are being advocates for their clients position. And I think we have to give you know some latitude to the fact that These attorneys are arguing separate points of view. I think there's equities on both sides. I mean, Is it, is it fair and equitable to allow the plaintiffs to have, you know, waited for nine months and failed to assert their counter claims at that late stage after judgment is entered and after a sale the property is looming. I mean, I think personally, the, the attorney who was arguing for the servicer and the bank at that hearing. I think he was wrong. I think that that counter claim, I think, should have should have been should have been brought at the time of the foreclosure lawsuit. I mean, look where we are now as a result, but Sort of lost my train of thought there. I think that what happened here. You can't say it's it's it's unfair to to apply res judicata under all the circumstances. What do you say to the argument that was raised by your opposing counsel that they didn't wait. In essence, five months that they moved to file a counter claim within weeks of The bank deciding to go forward with the confirmation Yeah, you know what, I'm not sure that the record is very clear on exactly what what happened at that time. And we do know that there was a judgment. I think in 2012 and there was a substantial delay afterwards, where I believe the parties were negotiating a loan modification agreement and I guess it fell apart, but I don't know that you can I don't know that you can blame you know either side for that. But I do think that you can blame the plaintiffs for not having moved more promptly in terms of getting their counter claim on file. All right. I have no additional questions. Thank you. Thank you. Also, do you have any comments relative to the implications of the bankruptcy discharge. No, I think it was more or less accurately stated that the bank is permitted to pursue their security interest after you know resolving the personal indebtedness of the plaintiffs. So I don't think there's anything that was improper or inequitable about what was happening. Well, if the plaintiff or the Adler's were allowed to be discharged in bankruptcy on the original contract, and then in the modification be allowed not to be personally liable. Is that a modification or is that a rewriting of the contract. I think it's still a modification, I guess, but I, I guess you could probably call it either either way. And so this happens on a regular basis where the banks will actually modify an agreement and give up the right to obtain a personal personal deficiency judgment in the event that there was a discharge. Yes, that happens all the time judge. Okay, thank you. I have no further questions. Any other questions. I'm sorry, I do not. Thanks. Who do I thank you. Thank you. Okay. Mr Brown, you may proceed with your five minutes of rebuttal. Thank you, Your Honor, just a couple of quick things first to make sure the record is clear, the complaint in this case does not allege that they as a direct and proximate result that defendants misconduct. There's lost their family. Actually says lost the opportunity to save their family home. I believe that is distinct and I wanted to call it. Just a moment. If we take a devoid of context view of the claims bar set forth in 609 C is all we do is say a complete bar to all claims and we divorce it from the entirety of the context. But that would mean is if during the foreclosure, the president of Bank of New York ran over Mrs. And she wanted to pursue a personal injury claim, but the foreclosure claims case concluded. That she would not be allowed to bring that personal injury claim against the president of Bank of New York or against Bank of New York. Because the bar of all claims prohibited it. That is obviously an absurd result. And so what we have to do is look at the language in context and give Fair interpretation of the legislative intent behind it and the legislative intent in context is to provide finality to foreclosure purchasers, not to give blanket releases among all of the parties to a given foreclosure case. I also want to highlight that there are no cases published or that have ever held that section 1509 C bars any claims other than one claims to an interest in the property or two petitions under 1401 or similar statutes to try to undo or overturn a foreclosure judgment or sale order. That's it. If the court interprets section 1509 C as Aptalese advocate, it would be breaking entirely new ground and reinterpreting section 1509 C contrary to how other courts have interpreted it in the past. And then the issue with judicial estoppel, you know, understanding that that issue was waived. I just want to highlight that. Yes, the Adler's attorney advocate advocated for the opposite position, but he lost. And so judicial estoppel has no bearing on anything when you make it when you make an argument, but you lose. The Boney, on the other hand, they maintain that position and they prevail in part based on the foreclosure court's understanding that there would be another avenue for them to proceed here. But I do want to back up again because we've been focused on the equitable considerations vis-a-vis res judicata. But again, this is not the same transaction. The entirety of the rights between the parties as related to the mortgage and promissory note had already been fully and finally adjudicated more than two years prior to the alleged misconduct that gave rise to the claims in this case. It is simply not possible for that to be the same transaction. They're separated in subject matter and time. And the Illinois Supreme Court has said again and again that if these matters are separated in both subject matter and time, they are not the same transaction. There is no identity of causes of action and res judicata does not apply. And then one more point I want to make and then I'll defer to the court for additional questions. With respect to giving up the right to pursue a personal deficiency. In the context of a loan modification, Bayview and Boney would not be giving up that right. They have lost that right pursuant to the discharge that was entered. If a loan modification agreement tried to reestablish that right, that would be a new right created for Bayview and Boney's benefit. And it would actually be in direct contradiction to establish federal law that says the discharge injunction of SACRO is sanct and cannot be violated even in the context of a loan modification. So the Adlers were not getting any new rights. They were simply maintaining the status quo established by the bankruptcy by seeking to have the appropriate language inserted into the modification agreement. And then with respect to the timing, again, the Adlers were in negotiations. There were letters being exchanged back and forth. The way that things ended was that there was radio silence coming from Bayview and Boney. And the next thing that the Adlers heard was a motion to affirm the sale. And then within a few weeks after that motion was filed, they were in court saying no, no, no, I have power claims. They have engaged in unfair conduct in connection with this loan modification process. Please let me pursue the power claim. So it wasn't nine months, it wasn't five months, it was within weeks that they learned that they actually have these claims because prior to that, they thought that the issue would be resolved with continued negotiations. So with that, if the court has any further questions. Thank you. Justice Jorgensen, do you have any questions? Yeah, I do have a question about the parties, the respective parties' right to pursue personal liability or the plaintiff's position that once I discharge this in bankruptcy, you cannot pursue personal liability. And that's your position, right? I have not misstated it? That's correct. That's black letter bankruptcy law. Right. So here's my question. I mean, was there just never a meeting of the minds on what this loan modification agreement would entail? No, I don't think that Boney necessarily intended to reestablish personal liability. I think that they're smarter than that. An attempt to reestablish personal liability would be a discharge injunction violation resulting in substantial, potentially punitive damages. I think it was just a screw up. I think that they were dealing with volume because we were in the wake of the financial crisis and language that should have been inserted probably in a form agreement didn't get inserted. And when their attorneys tried to fix it, he couldn't get it done. Again, likely not because of any necessarily malevolence, but because they just weren't getting it done properly. Well, I mean, why why wouldn't a court look at that and say there just simply was no bottom line agreement here? Maybe one side isn't aware of the bankruptcy. I mean, you're you're sort of letting asking us to say or to understand that, look, there's a lot of stuff going on and somebody dropped the ball. So we should have gotten that. And it was just a big cluster that we didn't get that language in this loan modification. Well, we've sort of wandered into the merits of the underlying claims, which I'm not sure is entirely relevant to the questions presented on this appeal. But nevertheless, again, discharge sort of recognition language is a routine part of loan modification agreements. The Adler's foreclosure counselor knew it. It would likely have been malpractice for him to have the Adler sign an agreement that did not have that language in there. But that's my point. Nonetheless, we get to this point and there's a dispute over the language. What what do we make of that? Well, I mean, what we make of it is that if Bayview and Boney were trying to reestablish personal liability, then they've just violated the discharge injunction. And my clients have a whole different set of claims. But I don't think that's the case. Or we don't want to enter into a loan modification with you. Well, no, the knowledge of the bankruptcy predated their application for the loan modification. Bayview and Boney modified the loan knowing full well that the Adler's had discharged their personal liability and that Bayview and Boney would not be entitled to reinsert it under any circumstances. OK, I have nothing else then. Thank you. Justice Brennan, do you have any questions? I do. I meant to ask this earlier with respect to judicial estoppel. Doesn't that typically apply to contrary taking a contrary factual position in a later proceeding? And aren't we talking here about a contrary legal position where that doctrine generally does not apply? Well, I think we're sort of treading a blurry line between fact and law. You know, whether the claims were sort of apples and oranges and were arising from completely different sets of circumstances or not is, I mean, is arguably a factual position. And Boney took the position that these claims were completely unrelated, arose from separate facts and were apples and oranges. I would posit that that is indeed a factual position that they were taking. All right. I have no additional questions. Thank you. Thank you, Mr. Brown. My recollection was that the trial court, due to the discharge and bankruptcy, entered a deficiency judgment in REM. Is that correct? Yeah, that's usually how it's done, although I mean, it's not so much a deficiency judgment in REM. It's that the final judgment is entered in REM, meaning that there is no in personam judgment and no deficiency can be pursued. But once the judgment is entered and the property is sold, all of the financial matters are done. There is no money. There is no more money to be had regardless. Right. And my recollection was that any claims that were supposed to arise out of the litigation was supposed to relate to the money that was realized upon the sale of the property that was left over after the mortgage was satisfied. If in fact it was. Am I correct or incorrect about that? I'm not 100% sure I'm following. I think what the court is referring to are the exceptions set forth in Section 1509C. Right. The talk about how these claims are supposed to address the money that's available. And if there is a deficiency and it was discharged in bankruptcy, what exactly are we talking about money wise? Are we talking about negative money or nonexistent money or what? So I think what I'm trying to get at is, was there any funds available in the event that your clients won their counterclaim? Would they collect only from the portion of the surplusage that didn't exist or would they be entitled to additional ad damnum or separate ad damnum regardless of whether or not there was a surplusage that the parties or the lien holders, junior lien holders, second mortgagee and so on could make a claim for? Well, it would be a separate ad damnum. But I think I think the disconnect, Your Honor, is in our interpretation of the all claims language. My view is that those exceptions are if the claims are barred by this section or otherwise would be barred by this section. Here are two exceptions where you can still make these limited claims that would otherwise have been barred. My position is that the claims were not barred because Section 1509C does not speak to the claims that the owners have raised in this case. Are there any other questions from the panel? Not for me. Thank you. None. Thank you. We will take the case under advisement and render a decision in apt time. Thank you. The proceedings are terminated. Thank you, Your Honor.